**In the MATTER OF the Termination of the Parent–Child Relationship of S.L. and D.L., Children, and R.M. and Unknown Fathers, Parents.**

**R.M., Appellant–Respondent,**

v.

**STEUBEN COUNTY DEPARTMENT OF PUBLIC WELFARE, Appellee–Petitioner.**

**No. 76A04–9112–JV–422.**

Court of Appeals of Indiana, Fourth District.

Sept. 16, 1992.

Latriealle Wheat, Wheat and Stout, Angola, for appellant-respondent.

Alfred R. Gutstein, Angola, for appellee-petitioner.

CONOVER, Judge.

Respondent–Appellant R.M., the mother, appeals the trial court's order which terminated the parent-child relationship with the children, S.L. and D.L., and herself and their respective fathers.

We reverse and remand.

Mother presents five issues for our review but we will address only the following issue, as it is dispositive:

> whether the trial court erred in failing to appoint a guardian ad litem for the children for the termination proceeding.

On August 21, 1989, the Steuben County Department of Public Welfare (DPW) initiated a children in need of services (CHINS) proceeding for R.M.'s two children, S.L., born 1984, and D.L., born 1987. As requested by DPW, the court ordered the children placed in foster homes.

On October 3, 1989, at the factfinding hearing, R.M. entered an admission that the children were children in need of services. The court entered its order in accordance with R.M.'s admission.

On November 5, 1990, DPW filed its petition for the involuntary termination of the parent-child relationship of the children and their parents, which was later amended on January 16, 1991. At the initial hearing on February 19, 1991, the court appointed counsel to represent R.M. after she objected to the termination of the parent-child relationship. On August 21, 1991, the trial court held a factfinding hearing for the termination petition. Subsequently, the court entered its order, dated September 19, 1991, terminating the parent-child relationship of S.L. and D.L. with R.M. and their respective fathers. The next day R.M.'s counsel filed a motion for a new trial arguing the court failed to comply with IND. CODE 31–6–5–4(d) by not appointing a guardian ad litem, court appointed special advocate, or both, for the children. The court denied the motion. R.M. appeals.

R.M. contends the trial court erred in failing to appoint a guardian ad litem to represent the interests of the children as required by IC 31–6–5–4(d). We agree.

IC 31–6–1–1 provides that it is the policy of the state of Indiana and the purpose of the juvenile code:

> (2) to provide a judicial procedure that insures fair hearings and recognizes and enforces the constitutional and other legal rights of children and their parents.

Because termination proceedings implicate the fundamental relationship between parent and child, the legislature has provided a detailed list of procedural requirements for courts to follow in such proceedings. *See* IC 31–6–5–1 to 6. IC 31–6–5–4(d) provides:

If a parent objects to the termination of the parent-child relationship, the court shall appoint a guardian ad litem, court appointed special advocate, or both, for the child.

In the instant case, when the trial court did not appoint a guardian ad litem for the children, counsel for R.M. brought the error to the attention of the court by motion filed the day after the factfinding hearing.[1] The court denied the motion.

DPW concedes the court failed to appoint a guardian ad litem or special advocate for the children. However, it urges R.M. has waived the issue by failing to object during trial. A party may not raise an issue for the first time in her motion to correct errors or on appeal. *Rodgers v. Rodgers* (1987), Ind.App., 503 N.E.2d 1255, 1257, *reh. denied, trans. denied.*

■■■ This argument implies R.M. had a duty to protect the children's statutory right to representation and the ability to waive this right. Waiver has been defined as an intentional relinquishment of a known right involving both knowledge of the existence of the right and the intention to relinquish it. *Indianapolis v. Twin Lakes Enterprises* (1991), Ind.App., 568 N.E.2d 1073, 1077, *reh. denied, trans. denied.* Waiver is usually a matter of personal privilege; it must be made by the person whose rights or remedies are to be affected. 92 C.J.S. *Waiver* (1955). The statutory right to have a guardian ad litem or special advocate to represent their best interest belongs to the children, not R.M. Neither R.M. nor the State can waive the children's statutory right.[2]

■ DPW also contends R.M. had no standing to litigate this issue because the children's rights, not R.M.'s rights, were violated. DPW maintains in order for R.M. to have standing, she must show she was injured by the court's omission. It cites *Rumple v. Bloomington Hospital* (1981), Ind.App., 422 N.E.2d 1309, for the proposition that in order to have standing, a plaintiff must show she was harmed by the court's action and must assert a personal right which was violated. *Id.* at 1314. The standing rule normally bars litigants from asserting the right or legal interests of others in order to obtain relief from injury to themselves. *Id.*

Standing is a restraint upon the court's exercise of its jurisdiction in that it cannot proceed where there is no demonstrable injury to the complainant before it. *City of Indianapolis v. Indiana State Bd. of Tax Com'rs* (1974), 261 Ind. 635, 308 N.E.2d 868, 870. R.M.'s fundamental right to a parent-child relationship was impacted by the lack of an independent representation of the children's interest. Therefore, we find R.M. had standing. Furthermore, given the ages of the children, the court's refusal to provide representation of the children effectively foreclosed any opportunity for the children to claim their right to representation by argument on their own behalf on appeal.

■ The DPW maintains any error was harmless since substantial evidence exists to support the trial court's judgment. It urges even if a guardian ad litem for the children had been appointed, the result would have been the same.

The time-honored right of parents to establish a home to raise their children is protected by the Fourteenth Amendment to the United States Constitution. *Pierce v. Society of Sisters* (1925), 268 U.S. 510, 532–33, 45 S.Ct. 571, 573, 69 L.Ed.2d 1070. The

---

1. Because of the substance of the motion and the relief requested, we treat it as a motion to correct errors, *see* Ind. Trial Rule 59(J), for review purposes.

2. IC 31–6–7–3 prescribes the strict procedural requirements which must be met for a child to waive any rights guaranteed to the child under the Constitution of the United States, the Constitution of Indiana, or any other law, including the juvenile code. *See* Commentary to IC 31–6–7–3.

right to raise one's children has been recognized to be one of the "basic civil rights of man." *Skinner v. Oklahoma* (1942), 316 U.S. 535, 541, 62 S.Ct. 1110, 86 L.Ed. 1655.

However, there are circumstances in which the constitutional right to raise one's children must be subordinated to the need to protect the health, welfare, and safety of the children. The purpose of terminating parental rights is not to punish parents, but to protect the children. *Egly v. Blackford County Welfare Dept.*, (1992), Ind., 592 N.E.2d 1232, 1234.

 Statutory requirements have been held jurisdictional for many years in Indiana. *See Shupe v. Bell* (1957), 127 Ind.App. 292, 141 N.E.2d 351, 354. Statutes which take away, change or diminish fundamental rights, statutory remedies unknown to common law, and statutes which provide new and extraordinary remedies must be construed strictly both to the cases embraced within their terms and as to the methods to be pursued. *Id.* at 353. The trial court abuses its discretion when it fails to comply with a statute and our scope of review in that question is not limited in any way. *Johnston v. Tipton Community School Corp.* (1970), 253 Ind. 460, 255 N.E.2d 92, 94–95.

According to IC 31–6–5–4(b), the attorney for DPW represented the interests of the State.[3] The court appointed counsel for R.M. represented her interests. IC 31–6–3–2(c). At the time of the hearing, the children were approximately seven and four years old. Due to the court's failure to follow the unambiguous language of the statute, no one represented the interests of the young children involved. We cannot find the trial court's initial failure to follow the statutory mandate to be harmless error.

---

**3.** The State at first glance is seemingly acting to promote or protect the interest of the children. However, it also has an interest in bringing to an end the financial burden it is bearing while the child is in welfare's custody. By terminating the parental rights, rather than continuing with the CHINS procedures, the State pursues the route leading to adoption of the child and a conclusion to the State's financial burden for

Reversed and remanded for action not inconsistent with this opinion.

MILLER and SHARPNACK, JJ., concur.

the children. Therefore, the interests of DPW and the interests of the child are not necessarily identical. The legislature recognizing this reality enacted several statutes which direct or permit the court to appoint a representative for the children involved in such proceedings. *See* IC 31–6–4–10(g), IC 31–6–4–13.6(c)(1) and (2), and IC 31–6–5–4(d).