In re James Daniel HEATON, a Child in Need of Services.

No. 32A01–8605–CV–143.

Court of Appeals of Indiana,
First District.

Nov. 26, 1986.
Opinion Upon Rehearing Feb. 9, 1987.

Kenneth J. Falk, Carleton A. Lewis, Legal Services Organization, Indianapolis, for appellant.

Charles E. Hostetter, Hostetter, Engel & Lucas, Brownsburg, for appellee.

NEAL, Judge.

## STATEMENT OF THE CASE

Respondent-appellants, Harold and Joyce Heaton (the Heatons), bring this appeal from the Hendricks Circuit Court, Juvenile Division, contesting its finding that their adopted son, James Daniel Heaton (James), is a child in need of services (CHINS) and a judgment entered pursuant to that finding.

We reverse.

## STATEMENT OF THE FACTS

James ran away from the Circle R Christian Home on October 14, 1982. He had been placed in the home six months before by his adoptive parents, the Heatons, who are residents of New Jersey. The same day he ran away, James was picked up and detained by the Hendricks County Sheriff's Department. Without a CHINS petition having been filed, the court held an initial hearing on October 14 and advised James of his rights and appointed counsel to represent him. James was returned to the custody of the sheriff. Another hearing was held on October 25. James indicated he did not wish to return to the Circle R Christian Home and entered an admission to being a child in need of services. The court so found, returned James to the sheriff's custody pending disposition, and assessed costs of $150.00 against the Heatons. A third hearing was held on November 15. At this hearing, the court entered an order for the Heatons to pay $50.00 per week as temporary child support commencing on November 19, and fixed the arrearage at $93.00. James was placed with a foster family. The Heatons were ordered to appear at a hearing set for December 13. However, at the hearing on that date, the court noted that the order had not yet been served on the Heatons, so another hearing was scheduled. The temporary child support order remained in effect.

The Heatons were served notice on January 25 of the review hearing, scheduled for March 14, 1983, but they did not appear. At this hearing, the court fixed child support at $50.00 per week. The court noted that the Heatons had paid $300.00, but an arrearage of $620.00 existed, so the arrearage was entered as a judgment against the Heatons.

A review hearing was held on September 19, 1983, and the court ordered the Heatons to submit a financial statement, which they did on November 14. Review hearings were held on February, 22 and November 16 in 1984, and on April 15 and October 15 in 1985. At each hearing, James's situation was reviewed and a case plan was submitted by the welfare department. James was eventually placed in the Indiana Soldiers and Sailors Childrens Home. At the April 15 hearing, the court noted that the Heatons' failure to make child support payments had resulted in an arrearage of $21,506.99, and it entered a judgment against them in that amount.

On December 26, 1985, counsel for the Heatons entered his appearance and filed a Motion for Relief from Judgment. The Heatons argued that the trial court had never had subject matter jurisdiction of the CHINS proceedings or personal jurisdiction of them. The Heatons also asserted that they were not given adequate notice of the hearings, that the $21,506.99 judgment against them was clearly erroneous because the arrearage was mathematically impossible given the $50.00 per week support order, and that the arrearage failed to credit them for payments they made.

On February 3 of this year, a hearing was held on the Heatons' motion. It was denied, and they were ordered to submit a financial declaration and repayment plan, which they filed on March 3. The Heatons filed a motion to correct error on March 19. The court deemed the Heatons' proposed repayment plan inadequate and denied the motion to correct error on April 30. From that denial the Heatons instituted this appeal.

## ISSUES

Although several issues are raised, we will address only the following issue, as it is dispositive:

Whether the trial court lacked subject matter jurisdiction of the CHINS proceeding, rendering its judgment and orders void.

### DISCUSSION AND DECISION

The Heatons argue that the trial court failed to comply with the statutory requirements regarding a CHINS proceeding; therefore, it lacked subject matter jurisdiction.

The statutory requirements for CHINS proceedings are set forth in IND. CODE 31–6–4–1 to –19.5. Courts have consistently held that strict statutory compliance is required for juvenile courts to obtain subject matter jurisdiction in such proceedings. *Kindred v. State* (1986), Ind.App., 493 N.E.2d 467; *Shupe v. Bell et al.* (1957), 127 Ind.App. 292, 141 N.E.2d 351.

First, IND. CODE 31–6–4–3(a)(6) provides the definition of a CHINS under which the welfare department claims it proceeded:

"A child is a child in need of services if before his eighteenth birthday he substantially endangers his own health or the health of another and needs care, treatment, or rehabilitation that he is not receiving, and that is unlikely to be provided or accepted without the coercive intervention of the court."

The Heatons do not dispute the fact that, by running away, James endangered his health.

IND. CODE 31–6–4–8 establishes the next steps to be followed in obtaining jurisdiction in a CHINS proceeding. The section provides:

"(a) Any person may give an intake officer written information indicating that the child is a child in need of services. If the intake officer has reason to believe that the child is a child in need of services, he shall make a preliminary inquiry to determine whether the interests of the child require further action.

(b) A preliminary inquiry is an informal investigation into the facts and circumstances reported to the court. Whenever practicable, it should include information on the child's background, current status, and school performance.

(c) The intake officer shall send to the prosecutor or the attorney for the county department a copy of the preliminary inquiry. The intake officer shall recommend whether to file a petition, informally adjust the case, refer the child to another agency, or dismiss the case.

(d) The person representing the interests of the state and receiving the preliminary inquiry and recommendations shall decide whether to request authorization to file a petition. This decision is final only as to the office of the person making it."

If the prosecutor or county attorney determines that a CHINS petition should be filed, authorization must be obtained from the juvenile court. This procedure is set forth in IND. CODE 31–6–4–10 as follows:

"(a) The prosecutor or the attorney for the county department may request the juvenile court to authorize the filing of a petition alleging that a child is a child in need of services; that person shall represent the interests of the state at this proceeding and at all subsequent proceedings on the petition.

(b) The juvenile court shall consider the preliminary inquiry and the evidence of probable cause as contained in either the report of the preliminary inquiry or an affidavit of probable cause. The court shall authorize the filing of a petition if it finds probable cause to believe that the child is a child in need of services.

(c) The petition shall be verified and be entitled 'In the Matter of _____, a Child Alleged to be a Child in Need of Services', must be signed and filed by the person representing the interests of the state, and must contain the following information:

(1) A citation to the section of this article that gives the juvenile court jurisdiction in the proceedings.

(2) A citation to the section of this article that defines a child in need of services.

(3) A concise statement of the facts upon which the allegations are based, including the date and location at which the alleged facts occurred.

(4) The child's name, birth date, and residence address, if known.

(5) The name and residence address of the child's parent, guardian, or custodian, if known.

(6) The name and title of the person signing the petition.

(7) A statement indicating whether the child has been removed from his parent, guardian, or custodian, and, if so, a description of:

(A) efforts made to provide the child or his parent, guardian, or custodian with family services before the removal; and

(B) reasons why family services were not provided before the removal of the child, if they were not provided.

(d) Error in a citation or its omission is ground for dismissal of the petition or for reversal of the adjudication only if the error or omission misleads the child or his parent, guardian, or custodian to his prejudice.

(e) If the petition is authorized, the person filing may request in writing that the child be taken into custody. He shall support this request with sworn testimony or affidavit. The court may grant the request if it makes written findings of fact upon the record that a ground for detention exists under section 6(f) of this chapter.

(f) If the juvenile court grants the request to have the child taken into custody, it shall proceed under section 6(e) of this chapter."

The welfare department agrees with the Heatons that they did not receive notice of the proceeding prior to James's admission into CHINS; therefore, they were not present. The welfare department also does not dispute the facts that a CHINS petition was never filed, and that a fact-finding hearing was never held, as required by IND. CODE 31-6-4-14. Instead, it asserts it had authorization to detain James under IND. CODE 31-6-4-6(d)(4), and that the court was authorized to make a finding of CHINS without a fact-finding hearing, pursuant to IND. CODE 31-6-4-13.5.

IND. CODE 31-6-4-6(d)(4) does provide that an "intake officer may place a child in detention if he reasonably believes that the child is a child in need of services and that the parent cannot be located or is unable or unwilling to take custody of the child." However, the statute also requires that the parents shall be promptly notified of the child's detention and the reasons for it, and that a detention hearing must be held within 72 hours after the child is detained, again with notice to the parents. IND. CODE 31-6-4-6(c), (e). In the instant case, it is undisputed that the Heatons first received notice on January 25, 1983, three months after James was detained and found to be a child in need of services.

The welfare department is correct that IND. CODE 31-6-4-13.5(g) and (i) do not require that a fact-finding hearing be held where the child admits that he is a child in need of services, but subsection (g) still requires that a petition be filed. In addition, IND. CODE 31-6-4-13.5(e) requires:

"The juvenile court shall inform the parent or guardian of the estate that if the child is adjudicated a child in need of services:

(1) he or the custodian of the child may be required to participate in a program of care, treatment, or rehabilitation for the child;

(2) he may be held financially responsible for any services provided for himself or the child; and

(3) he or the custodian of the child may controvert any allegations made at the child's dispositional or other hearing concerning his participation, or he may controvert any allegations concerning his financial responsibility for any services that would be provided."

It is undisputed that the Heatons did not receive notice of the proceedings until three months after the court entered a child support order in the amount of $50.00 per week. While it is true that in a true

emergency situation a juvenile court does have subject matter jurisdiction under the CHINS statutes, that jurisdiction must be invoked properly, and a court does not acquire jurisdiction over a particular juvenile case where the jurisdictional prerequisites are completely ignored. *See In re Lemond* (1980), 274 Ind. 505, 413 N.E.2d 228.

The welfare department also asserts that the Heatons have waived any objection to the judgment by making several payments in attempting to comply with the judgment. This argument fails for the reason that where a court lacks jurisdiction of the subject matter, any judgment it renders is void ab initio; it is without force or effect and may be attacked at any time. *Smith v. Tisdal* (1985), Ind.App., 484 N.E.2d 42. The Heatons may attack the judgment on jurisdictional grounds even though they have made several payments in response to it.

We also take note of the entry of a judgment against the Heatons on April 15, 1985, in the amount of $21,506.99. The record shows that the only support order ever entered was on November 15, 1982, in the amount of $50.00 per week. By our calculations, based on the 126 weeks that elapsed between November 15, 1982, and April 15, 1985, the Heatons's total support liability was $6,300.00. The record also shows that the Heatons paid a total of $1,325.00 pursuant to the order. Therefore, by simple subtraction, this leaves an arrearage of $4,975.00. Although the record does not include a transcript of the April 15, 1985 hearing, we fail to see how the judgment of $21,506.99 could have been determined.

In the instant case it is undisputed that a CHINS petition was never filed and that the Heatons were not notified of the proceedings until well after a CHINS finding and child support order had been entered. We believe the statutes clearly set forth the jurisdictional prerequisites and it is only after a petition has been authorized, with notice to the parents, that a court may engage in a disposition of the child. *See Wardship of Nahrwold v. Dept. of Public Welfare of Allen County* (1981), Ind.App., 427 N.E.2d 474, *trans. denied.*

Because the court lacked subject matter jurisdiction of the CHINS proceeding, any order or judgment rendered is a nullity and is vacated.

Judgment reversed and vacated.

ROBERTSON, P.J., and RATLIFF, J., concur.

## OPINION UPON REHEARING

NEAL, Judge.

Appellee, Hendricks County Department of Public Welfare has filed a document entitled Motion For Stay of Publication of Opinion for a Thirty-Day Period, For Supplementing the Record, and For Rehearing. The reasons stated are that the original record is incomplete, and if the record is properly supplemented, and this court has the entire record before it, a different result will be reached.

We have examined the original brief of the Department and the record. Though it is mentioned by the Department that the Heatons failed to include the transcript presented at some hearing, the Department made no motion to supplement the record at the time of the original consideration of this appeal; nor does it then, or now, tell us what the evidence would have been, or how it would have affected the outcome of the case. Additionally, in its brief, the Department conceded that no CHINS petition was ever filed in the cause, nor was there ever any fact-finding hearing held. It additionally conceded that there was never any formal notice given to the Heatons of other reviews. Such was the basis of the original opinion. It is too late to permit the Department to do what it should have done in the first place.

For the above reasons, the motion and petition for rehearing are denied.

RATLIFF, C.J., and ROBERTSON, J., concur.